STATE of Arkansas *v.* Kenneth TUCKER

CR 79-231                                    597 S.W. 2d 584
Supreme Court of Arkansas
Opinion delivered April 21, 1980
Rehearing denied May 19, 1980

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellant.

*Ralph Wilson, Jr.,* Deputy Public Defender, for appellee.

FRANK HOLT, Justice. The appellee was charged with first degree murder. Following an in-chambers hearing, the court granted appellee's motion to suppress certain evidence seized pursuant to a warrantless search of an apartment he shared with the victim of the alleged murder. Hence, the state brings this interlocutory appeal. Ark. Rules of Crim. Pro., Rule 36.10. The sole issue presented is whether the appellee had abandoned the premises. The state argues that appellee's Fourth Amendment rights were not violated by the warrantless search inasmuch as the appellee had effectively abandoned the premises. *Thom* v. *State,* 248 Ark. 180, 450 S.W. 2d 550 (1970); and *Baggett* v. *State,* 254 Ark. 553, 494 S.W. 2d 717 (1973). Therefore the evidence should not be suppressed.

The courts have consistently held that abandonment is a fact question generally determined by a combination of acts and intent. *U.S.* v. *Alden,* 576 F.2d 772 (8th Cir. 1978); *Freidman* v. *U.S.,* 347 F.2d 697 (8th Cir. 1965), cert. denied 382 U.S. 946, 86 S. Ct. 407, 15 L. Ed. 2d 354 (1965); *Morton* v. *State,* 284 Md. 526, 397 A. 2d 1385 (Md. 1979). "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *U.S.* v. *Colbert,* 474 F. 2d 174 (5th Cir. 1973). Abandonment "implies a renunciation of any reasonable expectation of privacy." *U.S.* v. *Alden, supra; U.S.* v. *Wilson,* 472 F.2d 901 (9th Cir. 1973); and *Lupro* v. *State,* 603 P. 2d 468 (Alaska 1979). On appeal we make an independent deter-

mination, based on the totality of the circumstances, as to whether evidence obtained by means of a warrantless search, as here, should be suppressed, and the trial court's finding will not be set aside unless it is clearly against the preponderance of the evidence or clearly erroneous. *State* v. *Osborn,* 263 Ark. 554, 566 S.W. 2d 139 (1978).

The deceased was a double amputee requiring the use of a wheelchair. He was last seen alive on or about April 2. His body was discovered in an abandoned house in an adjoining county on April 12. In December, 1978, he rented an apartment in an area known as Hobo's Jungle for $80 a month. According to the appellee, he and the deceased were acquainted. The appellee, at the deceased's request, moved from a nearby mechanic's shop, where he had been working and living, into the apartment with the deceased. The understanding was that the appellee could live there in return for taking care of the disabled occupant. Appellee was to wash his clothes, cook his food, tend his sores, and assist him in the use of his wheelchair.

This arrangement continued until about March 19 or 20 when the appellee left and went to a motel in a nearby town. The first part of April he voluntarily entered a local Mental Health Center because he was suffering headaches from a recent injury. On April 10 he was discharged and left the state by bus without advising anyone he was leaving or that he was expecting to return. Before leaving he sold a car which he had purchased from the deceased. He removed his tools which he kept in the car, and carried them with him. He stated that he intended to find employment on a ranch near Tucson, Arizona, and purchased a through bus ticket. After he secured a job his intentions were to return to the apartment in Luxora to pick up his clothes, guns and another car, which he had also recently purchased from the decedent and which was locked up at the apartment. He stated that he had no intentions of abandoning the apartment nor his personal belongings. However, the appellee left the apartment in March knowing that the deceased, who paid the rent, had expressed his intent to leave for Oklahoma to live with one of his girl friends as soon as she could come after him (he understood the deceased would keep the apartment). He had

not been at the apartment for almost a month preceding the warrantless search on April 13. The appellee further admitted that he had purchased new clothing consisting of several pairs of blue jeans, several shirts, a jacket and a hat; although his destination was Tucson, he left the bus in Dallas; after several days there in a motel, he met a friend and they rented an apartment; he established his residence in the area, secured employment as a security guard and had worked about one day at the time of his arrest.

The landlord testified that although the rent had not been paid for April, it was regularly paid by the deceased about the first part of the month, and he had never been late before in paying his rent. He described the apartment at the time of the search as smelly, moldy and dark with things scattered about. The officers, who searched the apartment with the landlord's consent, stated that the apartment was cluttered with dirty dishes and messy, and it appeared that no one had been in the apartment for several days and had been abandoned.

Although the appellant expressed his intent not to abandon the seized items nor the apartment he occupied with the decedent, we are of the view that his conduct and acts plainly belie his stated intentions. We hold, therefore, that the court's finding of nonabandonment is clearly against the preponderance of the evidence.

Reversed.