IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          :
                            :      ID No. 1602005623
                            :      In and for Kent County
                            :
      v.                    :
                            :
CRISTO J. AGUILAR           :
                            :
      Defendant.            :
                            :

## ORDER

On this 15th day of August 2016, having considered Defendant Cristo J. Aguilar's (hereinafter "Aguilar's") Motions to Suppress, and the State's response, it appears that:

1. Aguilar is charged with one count of Drug Dealing and one count of Aggravated Possession of Marijuana. He moves to suppress evidence seized after a search of a silver Honda Civic (hereinafter the "Vehicle") and a search of his residence at 75 New Warf Road in Milford, DE (hereinafter the "Residence"). Both searches followed issuance of search warrants. Pursuant to a four corners analysis of the search warrant affidavits, Aguilar argues that the affidavits contain insufficient facts to establish a nexus between his alleged drug sale activity and the Vehicle and the Residence. The State argues that based on the totality of the circumstances, the affidavits set forth sufficient facts for a finding of probable cause to search the Vehicle

and the Residence.

2. The facts at issue are those contained within the four corners of the two identical affidavits offered in support of the two warrants. Detective Lord from the Milford Police Department provided the following facts in his probable cause affidavits. During the third week of January 2016, a past proven reliable confidential informant ("CI") reported to Detective Lord that Aguilar was selling marijuana in Milford. The CI identified the vehicle driven by Aguilar and the street that Aguilar lived on in Milford. Aguilar's address and the vehicle information were confirmed through Deljis. During that week, the CI set up a controlled buy with Aguilar. After the CI coordinated the buy, Detective Lord observed the Vehicle leave the Residence. He followed the Vehicle to the location of the controlled buy and observed a meeting between the CI and Aguilar. The meeting netted marijuana. Detective Lord then observed the Honda return to the Residence, and saw Aguilar enter the Residence.

3. During the last week of January 2016, the CI again contacted Aguilar to coordinate a second purchase. Officers observed the CI contact Aguilar, at the same time the Vehicle was in the Residence's driveway. Thereafter, while under police surveillance, the Vehicle left the Residence and went to the sale location. After observing a meeting between the CI and Aguilar which resulted in a second controlled purchase, surveillance units observed the Vehicle return to the Residence a short time

later and park in its driveway. Detective Lord, in his affidavit, represented himself to have expert knowledge regarding the drug trade and he opined that it is commonplace and expected for drug dealers "to secrete contraband proceeds of drug sales and records of transactions in secure locations within their residence . . ." He also stated in the affidavit that "drug organizations often utilize several locations such as residences . . . to conceal illegal contraband."

4. Aguilar carries the burden to establish that the affidavits contained insufficient facts to justify warrants.[1] A finding of probable cause based on search warrants requires a four corners analysis of the probable cause affidavits.[2] Accordingly, neither extrinsic evidence or the results of the search(es) are relevant. When reviewing warrants for sufficiency, a reviewing court must provide great deference to the decision of an issuing magistrate.[3]

5. As opposed to an arrest warrant, a search warrant targets a particular place where police believe evidence is located. Probable cause to believe a suspect committed a crime supports an arrest warrant, but does not alone justify a search of a suspect's home.[4] In order to issue a warrant to search a residence, the affidavit must

[1] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).
[2] *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975).
[3] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).
[4] *Dorsey v. State*, 761 A.2d 807, 821 (Del. 2000).

3

provide sufficient facts to show: first, probable cause that the defendant committed a crime; and second, probable cause to believe evidence of that crime is located in the residence.[5] Accordingly, the second requirement for a residential search warrant requires a demonstrated nexus between the crime and the location. However, "[t]he nexus need not be based on direct observation or facts placing evidence at the location to be searched [but] may be inferred from the factual circumstances . . .."[6] In other words, direct evidence is not required. Rather, circumstantial evidence permitting a reasonable inference is sufficient.

6. Aguilar does not challenge the sufficiency of probable cause to establish that he committed a crime for purposes of this analysis. Rather, he challenges the nexus between the criminal activity and the Residence and the Vehicle. With regard to the Residence, he argues that the affidavit contains no facts alleging any direct evidence of contraband or illegal activity in the Residence, In support of his position, he cites *State v. Cannon*[7], and *State v. Ada*.[8]

7. The State counters that the facts provide a sufficient nexus between criminal drug activity and the Vehicle and the Residence. The State argues that police

---

[5] *State v. Cannon*, 2007 WL 1849022, at *4 (Del. Super. June 27, 2007).
[6] *Id.*
[7] *Id.*
[8] 2001 WL 660227 (Del. Super. June 8, 2001).

4

observation of Aguilar leaving the Residence in the Vehicle to attend two separate controlled purchases, followed by his immediate return to the Residence on both occasions, provides such a nexus. The State also emphasizes that the CI's controlled purchases were independently corroborated by facts observed by the police.

8. This case is indistinguishable from *State v. Lindsey*[9] which this Court finds persuasive. As in the case at hand, at issue in *Lindsey* was a search warrant of a home and vehicle following two controlled purchases by a CI.[10] There, the police observed the Defendant driving directly to one purchase location, and during another purchase, the police observed the defendant return directly to his residence.[11] In addition, the officer/affiant in the *Lindsey* matter included an expert opinion that drug traffickers use their cars and residences to conceal contraband related to drug sales.[12] Based on this information, the Court held that there was a sufficient nexus to both the residence and the vehicle based upon (1) a single observation of the defendant leaving the drug sale location and returning directly to his the residence in the vehicle at issue, (2) a single observation on a different day of the defendant driving from the residence to a different sale location, and (3) the aforementioned expert opinion.[13]

---

[9] 2011 WL 2651808 (Del. Super. June 29, 2011).
[10] *Id.* at *1.
[11] *Id.*
[12] *Id.* at * 2.
[13] *Id.*

9. In Aguilar's case, there were four such direct travels observed, as opposed to only two in *Lindsey*. Furthermore, in addition to Detective Lord's expert opinion, Aguilar's case involves an additional fact. Namely, the description of the second transaction can only be fairly read to establish that the CI's second drug order from Aguilar took place by phone while Aguilar was in the Residence. Immediately after placement of the order, Aguilar was observed leaving the Residence in the Vehicle, heading directly to the drug sale location. In any event, apart from this additional relevant fact, the *Lindsey* decision's reliance on direct travels linking the Residence to the drug sale is consistent with multiple Federal Circuit Court of Appeals decisions that have reviewed this issue.[14] Accordingly, there was probable cause supporting a nexus between the Residence and the off-site illegal drug sales.

10. The Defendant also cites *Cannon v. State* which is distinguishable from the case at hand. In fact, the Court's decision in *Cannon* expressly distinguished facts such as the ones at issue in Aguilar's case. *Cannon* merely held that probable cause to

---

[14] *See U.S. v. Ribeiro,* 397 F.3d 43, 52 (1st. Cir. 2005)(holding that direct travel from home to a drug sale location, coupled with an expert opinion, and common ordinary experience is sufficient to establish probable cause for the required nexus); *see also United States v. Stearn*, 597 F.3d 540, 556 (3d Cir. 2010)(holding that probable cause to search a defendant's residence since he "left that property before the controlled buy and received proceeds thereafter...."); *see also State v. Hicks*, 575 F.3d 130, 136 (1st. Cir. 2009)(holding that a nexus was created based upon an officer following the defendant back to his residence after a controlled purchase); *and see United States v. Burton*, 288 F.3d 91, 104(3d Cir. 2002)(holding that a seller's return to his home after a purchase indicates that his home "was the destination for the illegal proceeds of his drug transaction", thus establishing a sufficient nexus).

search a residence cannot be "formed solely by statements of police expertise combined with the presence of a defendant's car at both a drug transaction and his confirmed residence."[15] Rather than supporting the suppression of evidence in the case at hand, the Court in *Cannon* expressly noted that "direct or indirect evidence that a defendant traveled immediately to his home after engaging in illegal activity might be sufficient to establish probable cause that evidence or contraband are located in the residence."[16]

11. Aguilar also cites *State v. Ada*[17] in support of his motion. While somewhat supportive of Aguilar's position, *Ada* is distinguishable as well. Namely, *Ada* did not involve a situation where the illegal drug sales immediately followed the defendant leaving the residence at issue. Rather, the defendant in *Ada* was observed leaving the residence at issue with a duffle bag to travel to another residence where there was evidence of drug contraband.[18] The situation in *Ada,* in other words, linked another residence (with strong evidence of drug activity) to the residence at issue. In contrast, in Aguilar's situation, Aguilar's travels circumstantially linked two separate drug sales

---

[15] *State v. Cannon*, at *6.

[16] *Id.* (Citing *United States v. Burton*, 288 F.3d 91, 104 (3d. Cir. 2002)( which recognized that "[t]he inference that drug dealers often keep evidence of their transactions at home] is much stronger when the home is the first place a drug dealer proceeds following such a transaction.")).

[17] 2001 WL 660227 (Del. Super. June 8, 2001).

[18] *Id.* at *2.

to the Residence at issue. Finally, in the case *sub judice*, at least one of the two referenced sales was coordinated with Aguilar while he was confirmed to be in the Residence.

12. At oral argument, Aguilar offered a hypothetical using the facts of his case, but instead substituting a Wawa as the location where he was located immediately before and after the drug sales. He argues that applying the State's logic, a search warrant of the Wawa would then be justified. This argument, however, omits the relevant expert opinion linking the Residence to the drug activity. It also does not recognize the ability for a magistrate or issuing judge to rely on common inferences based on life experience. Evaluation of probable cause is a common sense interpretation. Under the circumstances of this case, a publicly accessible convenience store would not permit the same inferences as would a person's Residence. While Aguilar's Wawa hypothetical illustrates well the dangers of not requiring a sufficient nexus, it does not apply in the context of evaluating a residence that is temporally tied to drug sales through direct travel and expert opinion. Here, the magistrate was justified in finding probable cause to issue the Residence search warrant.

13. Finally, as to the Vehicle, there were facts sufficient to establish probable cause forming a nexus between it and the illegal activity. The Vehicle was the only means of transporting both drugs and currency between two drug sales and the

8

Residence. It therefore was strongly and directly linked to the drug sales, providing sufficient facts to support a finding of probable cause of the required nexus.

14. Under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed as to both warrants. Accordingly, Aguilar's motion to suppress evidence seized from the Vehicle and Residence is DENIED.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge